IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )      CR No. 13-253-RWR-1
                                   )
                                   )      Washington, D.C.
            vs.                    )      October 27, 2014
                                   )      10:00 a.m.
RODNEY CLASS,                      )
                                   )
            Defendant.             )
_____)


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RICHARD W. ROBERTS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:            Jeffrey Pearlman
                               U.S. ATTORNEY'S OFFICE
                               FOR THE DISTRICT OF COLUMBIA
                               555 Fourth Street, NW
                               Washington, D.C. 20530
                               (202) 252-7228
                               jeffrey.pearlman@usdoj.gov



Standby Counsel
for the Defendant:             A.J. Kramer
                               FEDERAL PUBLIC DEFENDER
                               FOR THE DISTRICT OF COLUMBIA
                               625 Indiana Avenue, NW
                               Suite 550
                               Washington, D.C. 20004
                               (202) 208-7500
                               A._J._kramer@fd.org

APPEARANCES CONTINUED:

Court Reporter:               William P. Zaremba, RMR, CRR
                              Registered Merit Reporter
                              Certified Realtime Reporter
                              Official Court Reporter
                              U.S. District Court
                              for the District of Columbia
                              333 Constitution Avenue, NW
                              Room 6511
                              Washington, D.C. 20001
                              (202)354-3249
                              WilliamPZaremba@gmail.com


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2       THE COURT:  Good morning.

3       DEPUTY CLERK:  Good morning, Your Honor.

4       MR. BALAREZO:  Your Honor, this morning this is

5  the matter of the United States versus Rodney Class.

6  This is Criminal Record 13-253.

7       Present for the Government is assistant

8  Jeffrey Pearlman.  And also present is attorney A.J. Kramer.

9       Mr. Class is not present at this time, Your Honor.

10      THE COURT:  All right.  Good morning.

11      Counsel, I received from the Pretrial Services

12  Agency for our district a report dated this morning that

13  reflects, in part, that, according to the Pretrial --

14  I'm sorry, probation officer in North Carolina, Mr. Class

15  sent a letter stating he will not attend any more court

16  hearings, and that he was advised that his failure to attend

17  court hearings is a violation of his bond and he risks

18  arrest and bond revocation.

19      Perhaps I should start by asking Mr. Kramer if you

20  have any more information that you'd like to report to the

21  Court.

22      MR. KRAMER:  Good morning, Your Honor.

23      THE COURT:  Good morning.

24      MR. KRAMER:  I don't, Your Honor.  That's the

25  first I've heard of such a thing.  He hasn't sent me a

1   letter stating any such thing, and I haven't seen that

2   letter, obviously.

3           I did try his home and cell phones just before

4   Your Honor came out, and there was no answer at either one.

5   I honestly don't know.

6           And I didn't bring over the materials that would

7   show the last time I talked to him.  Those would be in my

8   office.  I think it was earlier this week, certainly not in

9   the past two or three days.  But I'm pretty sure it was

10  earlier this week, but I could find out, but those would be

11  in my office.  And there was certainly no indication during

12  that call that he was not going to be here.  So I'm not

13  clear what's going on.

14          THE COURT:  I did check my notes just to make sure

15  that when we were all here last time, I think it was

16  September 9th, I directed Mr. Class to appear today, this

17  morning at this hour, and warned him the normal warnings

18  that if he failed to appear, it could subject him to a

19  revocation of his bond and arrest.

20          What we are facing now is the option of proceeding

21  with our motions hearing without him present and considering

22  his absence to be a voluntary waiver of his right to appear

23  at this hearing, or do something else and issue a Bench

24  Warrant.

25          If you have a position you want to take, I'll

1    allow you to express that, and I'll also call on the

2    government to respond as well.

3             MR. KRAMER:  Your Honor, to be honest with you,

4    I don't know about motions hearings.  I know that at a trial

5    if a defendant does not appear, the trial can't go forward

6    in his absence.  I don't know if motions hearings are

7    covered under that.  But, technically, we're not -- just

8    technically, he represents himself, I don't represent him.

9    I'm just standby counsel.  So I don't know what role I would

10   have at such a hearing either.  That would be another

11   problem.  Not problem but issue, let me put it that way.

12            THE COURT:  All right.  Well, I should mention

13   there are some motions that have been filed by your client

14   that do not require an evidentiary hearing, and I'm prepared

15   to rule on those today.  Presumably, he'd have a right to

16   hear what I have to say, comment on it.

17            But I will tell you that my view is, with respect

18   to those motions, that I could rule upon without an

19   evidentiary hearing, and I could rule on the paper.

20   I don't think there would be any problem with my doing that,

21   and I'm preparing to do that anyway.

22            There are some Fourth Amendment issues that

23   I think would require an evidentiary hearing that I would

24   not propose to rule on without a full evidentiary hearing.

25   But I do expect to rule on some of the outstanding motions

1    that I don't think require an evidentiary hearing.

2           But unless you have anything further, I'll call on

3    the government to respond to what our current condition is

4    and the options that I laid out.

5           MR. KRAMER:  Your Honor, just one more thing

6    I wanted to say.  I'm in a difficult position in the sense

7    that he sent a number of motions, letters, I'm not clear

8    which, to the Court complaining about my status with him,

9    and my rendering of -- the counsel I've rendered to him or

10   whatever.  So I feel uncomfortable making any --

11   I understand without any evidence -- Your Honor could have

12   just ruled on the paper, obviously, on some motions, and it

13   wouldn't have been a hearing in any event.  But I feel

14   uncomfortable, obviously, making any kind of representations

15   about any legal issues or factual issues.

16          THE COURT:  Okay.  Thank you.

17          MR. PEARLMAN:  Good morning, Judge.

18          THE COURT:  Good morning.

19          MR. PEARLMAN:  I think -- I mean, we were ready to

20   go.

21          THE COURT:  Uh-huh.

22          MR. PEARLMAN:  I think at this point, I need to

23   ask for a Bench Warrant.  If he comes in, then we can quash

24   the Bench Warrant.  But at this point, I think I need to put

25   that in -- request that as a placeholder.

1          THE COURT:  Speak up, please.

2          MR. PEARLMAN:  To request it as a placeholder at

3    this point, you know, so that -- if he's an hour late, we

4    can deal with that then.  But at this point, I'm asking for

5    a Bench Warrant.

6          THE COURT:  What is your proposal with respect to

7    proceeding with the evidentiary hearing?

8          MR. PEARLMAN:  So I wasn't actually aware until I

9    saw this letter this morning about the status of Mr. Class.

10         I would like to just check with appellate, maybe

11   five or ten minutes, just to get a sense, because I think --

12   I assume that part of the hearing was his opportunity to

13   cross-examine the witness.  We do have a witness.  We were

14   ready to go forward with it.  So I would just ask for five

15   to ten minutes.

16         THE COURT:  All right.

17         I'll give you that, but I think there is some

18   distance we can travel today with respect to the motions

19   that have been filed that do not require an evidentiary

20   hearing.

21         MR. PEARLMAN:  Do those include my motions?

22         THE COURT:  Beg your pardon?

23         MR. PEARLMAN:  Do those include the government's

24   motions, Your Honor?  The motions in limine.

25         THE COURT:  There are some that the government has

1   filed that would not require an evidentiary hearing, but I

2   would still want to hear argument from both sides on them.

3            MR. PEARLMAN:  I understand.

4            THE COURT:  I think they had to do with your

5   404(b), the jury instruction, and another one.

6            MR. PEARLMAN:  Two jury instructions.

7            THE COURT:  Two jury instructions.

8            I think it wisest to not entertain those in his

9   absence.  I also probably think it wisest not to proceed

10  with the evidentiary hearing on those motions that require

11  the Fourth and Fifth Amendment challenges, at least until

12  you confer with appellate.

13           But with respect to some of the other motions,

14  I think it would be adequate for me to simply announce my

15  rulings on them.  If the defendant needed to hear anything

16  more about it, either he could read the docket or get a

17  transcript.

18           But I think I'm going to go ahead with some of the

19  motions I think I could have ruled on on paper anyway.

20  And after that, we can take a break.  I'd ask you to let me

21  know what you propose to do after you've consulted with

22  appellate, and then I'll entertain a motion -- or rule on

23  the motion for a Bench Warrant, all right?

24           MR. PEARLMAN:  All right.

25           THE COURT:  One of the things, just so the parties

1  know, I was going to ask Mr. Class at the beginning of this

2  matter was with respect to the exhibit list that I had

3  ordered him and the government to file by October 20th.

4  I did get one from the government by October 20th.

5  But unless I'm missing something, I didn't get any exhibit

6  list from Mr. Class.

7         I don't know if you are prepared, Mr. Kramer, to

8  comment at all about that, but one thing I was going to try

9  to figure out is if he's preparing to use any exhibits at

10  all; and if he is, whether there's any sort of reciprocal

11  discovery problem under the rules with his proposal to use

12  any exhibits, if he did.

13         If you feel comfortable commenting on that,

14  Mr. Kramer, I'd welcome any comment you have.

15         And now that I mention it, the reciprocal

16  discovery rules might well have implicated what I understood

17  in the prior filing to be his desire to call experts.

18         I can probably ask the government now whether,

19  under the rules, Mr. Class had asked for disclosure of

20  expert discovery, because I think the defense certainly has

21  a strategic ability to not ask for it intentionally, that

22  would then trigger whether the government is entitled to

23  reciprocal discovery of expert discovery from the defense.

24         But maybe just to make the record, Mr. Pearlman, I

25  can ask you, did Mr. Class specifically ask, under the

1  Rule 16, for expert discovery from the government?

2          MR. PEARLMAN:  I don't know.

3          THE COURT:  All right.

4          MR. PEARLMAN:  I think it's likely that he did,

5  because at one time he was represented by Ms. Quint, and she

6  probably would have asked for it, but I don't know the

7  answer to that.

8          THE COURT:  All right.

9          MR. PEARLMAN:  I'll check on that during the

10  break.

11          THE COURT:  Good.  I'll pass on that for the

12  moment and invite Mr. Kramer back up, if you had anything

13  you wanted to say.

14          MR. KRAMER:  Your Honor, I can also look and see

15  with respect to that issue.

16          I know I have a pleading that's -- a pleading

17  that's labeled "Exhibits" from Mr. Class.  I'm unclear --

18  it's not new, so I believe it was filed a while ago, but I'm

19  not clear on that either, to be honest with you, on whether

20  this was -- there was obviously a flurry of filings.  And

21  then Judge Kessler cut off that flurry at one point, and I'm

22  unclear where this came within that -- those pleadings.

23          THE COURT:  Mr. Pearlman, you might be able to

24  comment about that, whether that appears to have been an

25  exhibit to a filing before I had -- or Judge Kessler had

1    ruled on preventing Mr. Class from filing anything more

2    without Mr. Kramer's intervention.

3            What I certainly remember is that in my pretrial

4    order, I set a deadline of October 20th to submit an exhibit

5    list that conformed to a format that I attached to that

6    order.  And as far as I know, there's nothing that's been

7    submitted as an exhibit list conforming to the format that I

8    set forth in my pretrial order.

9            Are you aware of whether the filing Mr. Kramer has

10   was intended to be or represented to be the exhibit list

11   conforming to my pretrial order, which I issued in -- on

12   September 22nd?

13           MR. PEARLMAN:  It doesn't bear any resemblance to

14   what your order has requested.  I haven't received anything.

15           I'm the third AUSA on the case, but I'm not aware

16   of any filing by him that attempts to conform with that

17   order.

18           THE COURT:  All right.

19           (Pause)

20           THE COURT:  Counsel, let me just inform you about

21   what we have received from the Pretrial Services office.

22   It is a photocopy potentially of that letter that was

23   referred to in the Pretrial Services Agency report.

24           The first page appears to be a photocopy of an

25   envelope addressed to the Western District of North

1   Carolina, U.S. Marshals office.  And attached to that are

2   copies of the, presumably, the contents of that envelope.

3            Included is what purports to be a letter from

4   Mr. Class at his High Shoal's, North Carolina, address,

5   addressed to me and chambers, with the criminal number of

6   this case that says in part:  "Please be advised of my

7   notice of status and filing of documents in the

8   above-referenced case in your court.  I am corresponding

9   with you directly to protect the public, to remain in honor,

10  and to avoid any confusion or controversy from which might

11  arise a conflict and variance over the commingling of my

12  rights with the righting of the public.

13           "Because I am a private citizen of the

14  United States of America, I will no longer be appearing in a

15  public court due to a lack civilian [sic] due process and

16  thus personal jurisdiction, once again, to protect the

17  public, as well as to safeguard my private citizenship

18  status, by refusing to submit to any Marshal process, civil

19  or criminal, federal or state.

20           "If this case is not dismissed, disposed of or

21  abated, I'm willing to communicate with your court in a

22  private capacity through an ex-parte written response,

23  telephone hearing or personal visitation in chambers, if

24  deemed necessary to the disposition of this case.

25           "Sincerely" -- and it purports to bear Mr. Class'

1    signature.

2            There are a number of documents attached to it,

3    with a number of copies of notices bearing his signature,

4    directed to a number of different people, including the U.S.

5    Marshal in Charlotte, North Carolina; someone with the U.S.

6    Army Criminal Investigation, a marshal in the Moultrie

7    Courthouse across the street, the marshal in this building,

8    and so on.

9            MR. PEARLMAN:  Is there a date on the -- on either

10   -- is there a postmark date on the envelope or a date on the

11   letter?

12           THE COURT:  The postmark on the copy of what

13   purports to be the envelope is October 15th, 2014.  And the

14   typed date on the letter is October 1, 2014.

15           I will make this available for you all to inspect

16   before I do anything else with it and before I will

17   entertain a motion for a warrant, but I just wanted to let

18   you know what I got.

19           Mr. Smith, let me hand that back to you.

20           And when we take a break, counsel can review that.

21           But I think I want to take this moment to rule on

22   some of the motions, just so you know, that I don't think

23   require either an evidentiary hearing or even argument.

24           I'll rule now on the ones that don't require any

25   evidentiary hearing or argument.  But I think the only ones

1   that warrant any extended comment on the record are the

2   motions filed by Mr. Class docketed as No. 20 and No. 35,

3   and the portion of the motion docketed as No. 105

4   challenging the validity of the search warrant for

5   Mr. Class's vehicle.

6        The Capitol Police applied for and received a

7   search warrant from a D.C. Superior Court judge, and the

8   affidavit attached to the warrant set forth the details of

9   the investigation and the basis for the finding of probable

10   cause.

11        The warrant specified Mr. Class's vehicle as the

12   place to be searched.  Mr. Class states that the issuing --

13   quote, "the issuing warrant section in the police report

14   contained no issuing signatures, just a badge number, and

15   that the prescribed verification for the judge's signature

16   is missing."

17        He argues that the omission constitutes, quotes,

18   "A fatal flaw in the case, and is a direct violation of

19   Federal Rule of Criminal Procedure 3, 4 and 5, and is a

20   Fourth Amendment violation, and that the evidence obtained

21   through the warrant must be suppressed."

22        Where a warrant is supported by a finding of

23   probable cause, the missing signature and/or text in the

24   warrant return attached to the government's filing do not

25   require the evidence obtained from the warrant to be

1    suppressed.

2            The Supreme Court has made clear that technical

3    defects in a warrant do not call for or permit excuse of

4    what the search warrant produces.

5            Mr. Class's claim that the search warrant was

6    invalid because it lacked issuing signatures does not amount

7    to a valid Fourth Amendment challenge; and for similar

8    reasons, his allegations that the warrant was defective

9    because it violated Rules 3, 4 and 5 don't require the

10   exclusion of that evidence.

11           In any event, Mr. Class has not set forth any

12   facts to show that Rules 3, 4 or 5 of the Federal Rules of

13   Criminal Procedure were violated, and the record does not

14   support that assertion.

15           The filing docketed as No. 20 is captioned,

16   "A motion and requirement to quash plaintiff's latest

17   response, and a requirement to dismiss all charges for lack

18   of direct rebuttal of court order subject matter, lack of

19   standing, frivolous filings, and failure to produce corpus

20   delicti."

21           Mr. Class moves to dismiss the criminal case

22   against him and alleges that the charges against him are

23   invalid under the Second Amendment to the United States

24   Constitution.  And he seeks the removal of his GPS tracking

25   device.

1          His second motion docketed as No. 35, challenging

2     the charges against him under the Second Amendment, is

3     captioned as "Judicial Notice Motion To Remove U.S. Code 28,

4     Section 2672 Administrative Adjustment of Claims."

5          I will construe his pro se motions liberally, as I

6     must, and will treat them as a challenge to the remaining

7     federal count, since the D.C. Code charge is no longer in

8     the case.

9          Mr. Class contends, in essence, that the holdings

10    in three cases:  *District of Columbia versus Heller*,

11    reported at 554 -- I'm sorry, 554 U.S. 570 in 2008, and

12    *McDonald versus Chicago*, reported at 561 U.S. 742 in 2010,

13    and *Parker versus District of Columbia*, reported at 478 F.3d

14    370 by the D.C. Circuit in 2006, all require that the charge

15    against him be dismissed.

16         The Second Amendment to the U.S. Constitution

17    provides that a well-regulated militia, being necessary to

18    the security of a free state, the right of the people to

19    keep and bear arms shall not be infringed.

20         In the *Heller* case, the Supreme Court held that

21    the D.C. gun statute restrictions violated an individual's

22    Second Amendment right to keep and bear arms.

23         Although the Supreme Court held the D.C. gun law

24    unconstitutional, that court was careful in emphasizing that

25    nothing in our opinion should be taken to cast doubt on

1   longstanding laws forbidding the carrying of firearms in

2   sensitive places such as schools and government buildings.

3   Importantly, the Court stressed that such laws are

4   presumptively lawful, regulatory measures.

5            In *Heller,* too, decided by the D.C. Circuit in

6   2011 and reported at 670 F.3d 1244, the D.C. Circuit adopted

7   a two-part test to assist courts in deciding the Second

8   Amendment challenges to gun control statutes.

9            Under the two-step test, a reviewing court will be

10  required to ask first whether a particular provision

11  impinged upon a right protected by the Second Amendment.

12  And if it does, then the Court has to determine whether the

13  provision passes muster under the appropriate level of

14  constitutional scrutiny.

15           A longstanding statutory restriction is presumed

16  to be lawful or presumed not to burden conduct within the

17  scope of the Second Amendment.  A plaintiff can rebut this

18  presumption by showing the regulation does not have more

19  than a de minimis effect on his right.

20           To determine whether the particular gun control

21  law may be upheld, the D.C. Circuit concluded that

22  intermediate scrutiny was the appropriate level of scrutiny.

23  To pass muster under intermediate scrutiny, the government

24  has to show that the restrictions are substantially related

25  to an important governmental objective.

1          Now, under this showing, the government would be

2     required to establish a tight fit between the restrictions

3     and an important or substantial governmental interest, a fit

4     that employs not necessarily the least restrictive means,

5     but a means narrowly tailored to achieve the desired

6     objective.

7          Because the Supreme Court determined, in *Heller*,

8     that laws prohibiting individuals from carrying firearms in

9     sensitive places, such as government buildings, are

10    presumptively lawful, regulatory measures, Mr. Class would

11    have to rebut this presumption by showing that there was

12    more than a de minimis effect on his exercise of his Second

13    Amendment right.  But he has not provided any evidence to

14    rebut the presumption that Section 5104(e)(1) does not

15    burden conduct protected by the Second Amendment.

16         From as best I can decipher from what he files in

17    his motions, he asserts only that the District of Columbia

18    city code, quote/unquote, "is unconstitutional," and then he

19    cites to those three cases:  Heller, McDonald, and Parker.

20         Although his motions have been construed

21    generously, he would have to provide more than bold

22    assertions to support his Second Amendment claim against the

23    federal statute.  And so his motions, that's Nos. 20 and 35,

24    challenging the charge against him on Second Amendment

25    grounds, are denied.

1          He also asks that, in his first motion, to have

2     his GPS tracking device removed, and that request to remove

3     his GPS tracking device is also denied.

4          And the following motions filed by Mr. Class are

5     also denied:

6          His request for sanctions, as per court rules,

7     Federal Rules of Evidence and federal statutes, Fifth and

8     Fourteenth Amendment violations of due process, that's

9     docketed as No. 91; his motion for Rules of Court, Judicial

10    Notice of Adjudicatable Facts, that's docketed as No. 95;

11    his motion for the Removal of GPS tracking device Re:

12    Peonage, that's docketed at No. 96; his motion for Judicial

13    Notice Rule 201 Nonconsensual for Personal Jurisdiction;

14    motion, Jurisdictional Challenge; motion, Jurisdiction of

15    Nature and Cause of Laws Being Used, that's docketed as

16    No. 130.

17         In addition, his objection to the appointment of

18    standby advisory counsel, it's docketed as No. 104, is

19    overruled.

20         What I propose to do at this point is take a

21    break, let you consult with appellate.

22         Since I've overruled his objection, Mr. Kramer, to

23    your appointment, I'll let you do whatever you think you

24    might need to do as well, but tell me how much time you

25    think you need to have before you come back.

1              MR. KRAMER:  Your Honor, I can point out the

2    pertinent rule that I believe is the pertinent rule, which

3    is Rule 43, which states -- deals mostly with trial, but it

4    talks about the defendant's presence.  In (b)(3), it says

5    that, "The defendant's presence is not required if the

6    proceeding involves only a conference or a hearing on a

7    question of law," which the proceeding just was, but I think

8    an evidentiary hearing would obviously involve questions of

9    fact, and, therefore, his presence is required, I think.

10             THE COURT:  Is there anything in this rule -- and

11   I haven't read it through yet -- that talks about -- well, I

12   see something down here.  Give me a moment.

13             MR. KRAMER:  If he -- for the trial, clearly, it

14   can't proceed without him present, unless he showed up and

15   then absented himself, which is rule (c)(1).  But it can't

16   be conducted in his absence otherwise.

17             THE COURT:  All right.  I was reading the waiver

18   provision at (c)(2).

19             But I would be uncomfortable conducting an

20   evidentiary hearing without his ability to be here and

21   cross-examine, and my requirement to make findings of fact

22   and conclusions of law.

23             But I will still let you all take a break, consult

24   with whomever you need to consult with.  But I do want you

25   to come back at a convenient time this morning so that we

1  can decide which way we're going.

2          How much time do you think you need?

3          MR. PEARLMAN:  15 minutes, Your Honor.

4          THE COURT:  Mr. Kramer, is that enough for you?

5          MR. KRAMER:  I'm not sure who I would consult,

6  Your Honor, so I'm happy to come back whenever

7  Mr. Pearlman's ready.

8          I'll also try to contact Mr. Class again.

9          THE COURT:  All right.  It's a little after 10:15.

10  Why don't we come back at 10:35?

11          MR. PEARLMAN:  Your Honor, can I make one point,

12  please?

13          THE COURT:  Come on up, please.

14          MR. PEARLMAN:  Just with respect to your ruling on

15  105, just so that the Court is aware, after Mr. Class filed

16  that motion, I did go back and check with the agents, and

17  there is a copy of the search warrant, which, I believe, has

18  the proper signatures on it.  It's just that the original

19  papering agent didn't give me that copy.  I received the new

20  copy, and I did provide that to the defendant and to standby

21  counsel, just so that the Court is aware.

22          THE COURT:  All right.  So that copy is not the

23  one that's attached to your omnibus response?

24          MR. PEARLMAN:  No, I don't believe it is.

25  I received this copy a few weeks ago.

1              THE COURT:  As I recall, the one attached to your

2    omnibus response had some missing entries on the return

3    portion of the warrant, and, perhaps, some other items that

4    didn't quite correspond to Mr. Class's motion's description

5    of what was attached to your papers.

6              MR. PEARLMAN:  Do you want me to show you a copy

7    of the --

8              THE COURT:  Well, sure.

9              MR. PEARLMAN:  I'm just handing it up to the

10   Court.

11             THE COURT:  Give it to Mr. Smith.

12             What you have handed me appears to be marked as

13   Government's Exhibit 208, and it does, in the return

14   portion, bear a signature of the executing officer, as well

15   as a signature of the Superior Court judge, presumably

16   accepting the return.  Those entries were missing from the

17   entries, I think, that were on the copy attached to your

18   omnibus response, but that may be an issue for another day.

19             We'll hear from you -- Mr. Smith, I'll give this

20   back.

21             We'll hear from you when we come back.  Let's make

22   it 10:40, all right?

23             If there's nothing else, you'll be excused until

24   10:40.  Thank you.

25             (Recess from 10:19 a.m. to 10:45 a.m.)

1          THE COURT:  Good morning.

2          DEPUTY CLERK:  Your Honor, returning to the matter

3  of United States versus Rodney Class, Criminal Record

4  13-253.

5          THE COURT:  All right.  Good morning.

6          Mr. Pearlman, did you want to be heard?

7          MR. PEARLMAN:  Just briefly, Your Honor.

8          I spoke with appellate, and they would be

9  requesting, with me, that we hold in abeyance any more

10 rulings until such time as we can get the body here.

11         THE COURT:  Any more rulings as to anything at all

12 or just those --

13         MR. PEARLMAN:  Well, I think anything that

14 Your Honor might rule on legally would be fine.  I think the

15 issue is any factual hearings, and that's what the Fourth

16 and Fifth Amendment hearing is all about.

17         THE COURT:  I, frankly, agree with that, unless,

18 Mr. Kramer, you have anything else you want to add.

19         MR. KRAMER:  No, Your Honor.  I did try to call

20 his house and his cell phone again unsuccessfully.

21         THE COURT:  All right.

22         Did you have a request?

23         MR. PEARLMAN:  I do.  It's now been an hour since

24 we were supposed to start the trial and he is not present,

25 we don't know where he is, and we do have at least some

 1   evidence that he did not intend to show up.  So I'm asking

 2   for a warrant.

 3            THE COURT:  Mr. Kramer, if you feel comfortable

 4   responding, I'll let you do so.  If not --

 5            MR. KRAMER:  No, Your Honor.  I don't think --

 6            I'm sorry.  I don't think I have anything to add

 7   to that, Your Honor.

 8            THE COURT:  All right.  The government's motion is

 9   granted.  I'm going to authorize the issuance of a Bench

10   Warrant to be executed forthwith, as best as possible,

11   anyway.

12            We're going to suspend further proceedings until

13   the Bench Warrant is executed and Mr. Class is returned to

14   court.

15            I suspect that, because of these circumstances,

16   we would certainly have to suspend the running of the speedy

17   trial clock, if that doesn't happen automatically.

18   Any views about that?  I think it's automatically suspended.

19            MR. PEARLMAN:  I believe that that's correct,

20   Your Honor.  We would ask for it to be tolled.

21            MR. KRAMER:  Your Honor, I'm sure there's a

22   provision about the defendant's absence.

23            There's -- it's 3161(h)(3)(A).  Do you have this

24   book, Your Honor?  It's a blue federal criminal -- no, you

25   have a different version.  Sorry, I was going to give you

1    the page number, but...

2            THE COURT:  Well, I can find it with your citation

3    to the (h).  It's (h) what?

4            MR. KRAMER:  (h)(3)(A).

5            THE COURT:  Okay.  Which talks about the following

6    periods of delay shall be excluded in computing the time

7    within which the trial of any such offense must commence,

8    any period of delay resulting from the absence or

9    unavailability of the defendant or an essential witness.

10           I think that's correct, so the speedy trial clock

11   will be tolled, presumably, at least until we have Mr. Class

12   returned to court.

13           MR. KRAMER:  Your Honor, just -- I'm sorry to

14   interrupt.  It just occurred to me, and I'm not sure that --

15   maybe Pretrial knows where he is considering he has a GPS

16   tracking device on him.

17           THE COURT:  I suspect that's right.  And so I also

18   suspect that he might be here as early as Wednesday,

19   depending upon the schedule of the marshals who would

20   probably have to leave here and go down to North Carolina

21   and get him, assuming the marshals in North Carolina have an

22   easy time in identifying him and where he is.  So I'd ask

23   you all to keep your Wednesdays clear.

24           What I expect to do is to tell the jury office to

25   cancel the jury summons -- the jury panel that's been

1    summoned for potential service this week, I think, will just

2    have to be released, and we'll have to resummon a new panel

3    once we determine when to schedule a trial.

4         We certainly would have the motions hearing that

5    we have to schedule again.  And I don't see getting all this

6    done before the panel -- I guess the panel was told it would

7    be potentially a five-day period.  I don't see this

8    happening before that period expires.  So unless there's any

9    objection, I'm going to instruct the jury office to release

10   all the jurors who have been summoned for at least this

11   purpose, and we'll have to reschedule.

12        I don't know if you all also wanted to talk about

13   the other speedy trial issue that arose with regard to

14   whether we can schedule a case within 30 days or whether we

15   need to build in another 30-day period.  I have a view about

16   that and some case law about it, but if you wanted to be

17   heard.

18        MR. KRAMER:  I know there's case law both ways.

19   Some saying that if the change is just a minor change, that

20   may be.  But I think the law is -- the statute says that

21   he's entitled to 30 days after he's arraigned on the

22   indictment.  So -- but that would be up to Mr. Class,

23   obviously.

24        And I think it well may be moot in any event given

25   that he's going to show up and the case is going to have to

1    be rescheduled in any event, unless there was an issue about

2    whether it was rescheduled within the 30-day period.

3              THE COURT:  Well, I was hoping we would be able to

4    reschedule it short of that 30-day period, but I will cite

5    for you, if you want to look at it, the case of

6    *Rojas-Contreras* at 474 U.S. jump cite -- well, 231 at jump

7    cite to 33 and 34.

8              MR. KRAMER:  No.

9              THE COURT:  You may know that case already, but

10   I think the D.C. Circuit has also spoken in the *U.S. v.*

11   *Marshall* case reported at 935 F.2d 1298 in 1991, and I think

12   their view is different from yours.

13             MR. KRAMER:  No.  That may well be, Your Honor.

14   I honestly didn't do research on it.  I know the provision.

15   And it depends when Mr. Class gets here, obviously.  I have

16   longstanding plans to be gone the week of Veterans Day week.

17             THE COURT:  When we come back, once he's

18   presented, we'll certainly engage in full discussions about

19   timing and scheduling.

20             MR. KRAMER:  All right.  Thank you.

21             MR. PEARLMAN:  Just one point for clarification on

22   that, Your Honor.  Does that mean that if he comes back

23   today, we're still going to need to reset the trial date?

24             THE COURT:  I think that's moot.  He's not going

25   to be back here today, if he's in custody, that's just not

1    going to happen.

2              MR. PEARLMAN:  Okay.

3              THE COURT:  But if he shows up voluntarily and he

4    shows up here today and lets the Court know he's here, I'll

5    certainly ask you all if you're available to come back in,

6    and we'll figure out what's going on, okay?

7              I don't know if that answers your question, but...

8              MR. PEARLMAN:  I'm just trying --

9              THE COURT:  Rescheduling is certainly going to be

10   an issue.  We'll all get back together and figure out what

11   we can do, okay?

12             MR. PEARLMAN:  Okay.

13             MR. KRAMER:  Your Honor, I just want to say also

14   that I also had longstanding plans to be gone Thanksgiving

15   week.  So I just -- I obviously had no idea we might be in

16   this position, so I have those two weeks, the week of the

17   10th and the week -- so I think Thanksgiving is two weeks

18   after that.  The week in between I'm here; and the weeks

19   after that, I'm here.  But I just wanted to alert Your Honor

20   so you wouldn't think I was -- something untoward was going

21   on or whatever.

22             THE COURT:  Well, we'll determine at the

23   appropriate time what the interests of justice may require

24   under the Speedy Trial Act.

25             But thank you for coming in.  Unless there's

1    anything else, you may be excused.

2            MR. KRAMER:  Thank you, Your Honor.

3            MR. PEARLMAN:  Thank you, Judge.

4            (Proceedings concluded at 10:51 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date: October 27, 2015_____   /S/__William P. Zaremba_____

William P. Zaremba, RMR, CRR