IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )        CR No. 13-253-RWR-1
                                   )
                                   )        Washington, D.C.
          vs.                      )        February 09, 2015
                                   )        10:00 a.m.
RODNEY CLASS,                      )
                                   )
          Defendant.               )
_____)


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE RICHARD W. ROBERTS
UNITED STATES DISTRICT CHIEF JUDGE

APPEARANCES:

For the Government:          Jeffrey Pearlman
                             U.S. ATTORNEY'S OFFICE
                             FOR THE DISTRICT OF COLUMBIA
                             555 Fourth Street, NW
                             Washington, D.C. 20530
                             (202) 252-7228
                             jeffrey.pearlman@usdoj.gov




For the Defendant:           Rodney Class
                             P.O. Box 435
                             High Schoals, NC 28077
                             PRO SE




Standby Counsel
for the Defendant:           A.J. Kramer
                             FEDERAL PUBLIC DEFENDER
                             FOR THE DISTRICT OF COLUMBIA
                             625 Indiana Avenue, NW
                             Suite 550
                             Washington, D.C. 20004
                             (202) 208-7500
                             A._J._kramer@fd.org

APPEARANCES CONTINUED:

Court Reporter:                    William P. Zaremba, RMR, CRR
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   U.S. District Court
                                   for the District of Columbia
                                   333 Constitution Avenue, NW
                                   Room 6511
                                   Washington, D.C. 20001
                                   (202)354-3249
                                   WilliamPZaremba@gmail.com


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

PROCEEDINGS

1

2          DEPUTY CLERK:  Your Honor, this morning this is

3    the matter of the United States versus Rodney Class,

4    Criminal Record 13-253.

5          Present for the government is Assistant

6    Jeffrey Pearlman.

7          And Mr. Class is representing himself pro se, but

8    standby counsel is A.J. Kramer.

9          Also present is Probation Officer, Kathie McGill.

10          Mr. Class is present, Your Honor.

11          THE COURT:  All right.  Good morning.

12          Mr. Class, are you able to hear me?  Yes?

13          THE DEFENDANT:  Let me get things adjusted.

14    Say something so I can hear you.

15          THE COURT:  Yes.  I just wanted to make sure

16    you're able to hear me.

17          THE DEFENDANT:  Okay.  I've got adjusted through

18    this so it ain't so loud.  I'm not being blasted, so I can

19    hear.

20          THE COURT:  That's fine.  If at any time you need

21    me to speak more loudly or more slowly, please, as you have

22    done in the past, let me know that.  Will you?

23          THE DEFENDANT:  Okay.

24          THE COURT:  All right.

25          Mr. Class, I want to make sure that you have had

1    an opportunity to read the presentence report.  Have you had

2    a chance to read that?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  Let me know if you have any challenges

5    or disagreements with that.

6              THE DEFENDANT:  Well --

7              THE COURT:  I'm going to need to have you come up

8    to the microphone to make sure that the Court Reporter can

9    have recorded anything you want to say.

10             THE DEFENDANT:  All right.

11             To be honest with you, I'm not trying to be nasty

12   and I'm not trying to be arrogant here, I went through this

13   thing, I've read it.

14             When this plea agreement was put before me, there

15   was things that was not disclosed at the time, such as the

16   ruling that Judge Scullin made the same day that I was in

17   here that the laws were declared unconstitutional, and that

18   the law enforcement violates Supreme Court decisions.

19             We're still dealing with the fact that the

20   Capitol Hill ground is still the same piece of real estate

21   as the District of Columbia.  You can't distinguish the

22   difference.  Therefore, if the D.C. law was declared

23   unconstitutional, then this whole case should be thrown out,

24   because even under, like Mr. Pearlman sit here and stated in

25   his memorandum, on the last page in the last sentence,

1    "If this will assist Mr. Class in obeying the law."

2              Well, wait a minute, what law are we talking

3    about?  Because we addressed the fact that Title 18, 930

4    clearly sits here and says that the Capitol Hill ground had

5    to be posted.  If it isn't posted, Section 8 says it can't

6    be a conviction.  It had to be a willing knowledge on this

7    stuff.

8              When I was in here, it was still undecided

9    about -- the Capitol Hill.  Either you drop the Capitol Hill

10   sign -- it still boils to, you're dealing with the same

11   piece of real estate.  It's the same piece of paper, whether

12   it's on this side or this side.  Same sheet of paper.  This

13   is where the issue is coming in.

14             So when this plea agreement was set up, it was set

15   up on the fact that issue was still to be disclosed at that

16   time.

17             So I'm thinking now we need to come back in, if

18   we're going to deal with what the law is, what is the law?

19   Because last time, as you and I was talking, it's theory and

20   concept.  Whose theory and concept?  Where is the theories

21   and concept written at for that particular day in that

22   hearing?

23             But like I said, as Mr. Pearlman made the issue

24   that I hope I learn to follow the law, well, I pretty much

25   figured I was following the law, because it was filed in

1  here.

2          The issue also is the fact that Mr. Kramer was

3  supposed to file paperwork on my behalf, because this Court

4  sit here and made him -- I had to go through him.  Well, we

5  did go through him; we gave him paperwork.  It was never

6  filed.  So I had to file an enter of appearance in this

7  case.

8          The point is the Court denied all my paperwork,

9  even though he was supposed to file my paperwork for me, he

10 never did.  And I've got witnesses to this fact.  They're

11 sitting in the audience.

12         So, therefore, any plea agreement was based on

13 due-process violation that nobody sat here and followed

14 their own law, their own set of rules when this

15 plea agreement was given to me.

16         And Mr. Pearlman, again, made the issue that I was

17 supposed to go through Mr. Kramer to file paperwork.  Well,

18 I tried to go through Mr. Kramer, and he refused to sit here

19 and file any paperwork again.

20         So now, yeah, do I understand this?  Do I agree

21 with this?  No, I don't agree with it.  I never gave

22 consent.  I've never volunteered.

23         You can't sit here and say being handcuffed and

24 shackled -- and every time I've been handcuffed and

25 shackled, that's exactly what it was when I drug into this

1   Court on October 27th.  I've never volunteered.  I was

2   kidnapped and I was abducted out of North Carolina and drug

3   up here in handcuffs and shackles; therefore, that don't

4   consider volunteering.

5          Now, did I have in my possession?  Yes, I did.

6   Was I following the law?  Yes, I did.  Did I have a carry

7   permit for concealed?  Yes, I did.  Did I follow the

8   Constitution under Article 4, section 1 and 2?  Yes, I did.

9   Did the Court?  No.  Did they sit here and file the 14th

10  Amendment, equal protection under the law?  No.  This is

11  where the issue comes in.

12         You're going to do whatever you're going to do,

13  but if I'm going to follow the law, then the law needs to be

14  stated.  What law are we following?  Because I put the laws

15  before this Court.  That's where the problems is.

16         Now we've got a conflict.  If I'm supposed to

17  follow, what laws am I supposed to follow?  And if it is the

18  ones I put before the Court, that becomes an issue here.

19         And also it becomes an issue here that it is a

20  stated fact that the Social Security Act is and was

21  constitutionally -- declared Constitutional by the

22  Supreme Court of the United States as a lawful act of

23  Congress.

24         Under that Social Security Act, under 49 Stat. 629

25  and 631, it clearly shows that the state received federal

1    funding for every single live birth.  That makes

2    Mr. Pearlman and A.J. the trustees.  That makes me the

3    grantor in this thing.  Therefore, because they represent

4    the state, they're trustees in this thing.

5             I have put multiple birth certificates before this

6    Court to tender this case.  I have sat here and give

7    signatures to tender this case.

8             I have went through the United States Treasury

9    under Title 12, 6 and 411.  And under the 1913 Federal

10   Reserve Act, Section 16.  I went to the pay window to

11   discharge this and settle this thing.

12            Now, we got an issue here, because now we're now

13   in violation of international laws.  We're in violation of

14   Article IV of human rights violations, as well as in

15   slavery.  This now becomes an issue here.

16            And that is my complaint.  I've never volunteered.

17   I've never given consent.  And anything was done under

18   handcuffs and shackles cannot be considered volunteering.

19            So I've said my peace.  Whatever you want to do,

20   however you want to do it, you know, you're going to do --

21   you already got your mind made up to go do whatever, but

22   I've said my peace.

23            THE COURT:  All right.  Thank you, Mr. Class.

24            You may have a seat, and I'll ask standby counsel

25   if you've had an opportunity to review the presentence

1    report and discuss it with your client.  And do you

2    independently have any challenges to it?

3            MR. KRAMER:  There was no corrections, Your Honor,

4    other than -- actually, there's one minor change on page 20,

5    at the bottom of paragraph 80, the last sentence says,

6    "The defendant is represented by appointed counsel."

7    He actually has standby counsel appointed for him, I think

8    it should say.

9            THE COURT:  All right.

10           MR. KRAMER:  Other than that, there was nothing

11   that we had any challenge to or believed was incorrect.

12           THE COURT:  All right.  Thank you.

13           Mr. Pearlman, I take it you don't object to that

14   change being ordered to the paragraph 80 of the presentence

15   report.  And I'll direct that the presentence report, last

16   paragraph of paragraph 80, be changed to read the defendant

17   has been appointed -- the defendant has standby counsel

18   appointed.

19           PROBATION OFFICER:  Yes, Your Honor.

20           THE COURT:  Thank you.

21           Mr. Pearlman, let me have you respond, if you care

22   to, to the defendant's comments and ask if you too have had

23   an opportunity to review the presentence report and have any

24   objections to it.

25           MR. PEARLMAN:  Good morning, Your Honor.

1          THE COURT:  Good morning.

2          MR. PEARLMAN:  I did have a chance to review the

3   presentence report.  I had a chance to meet with the

4   presentence report writer, and I think it -- with the

5   exception.

6          MR. KRAMER:  Your Honor, I don't think --

7   Mr. Class indicates he can't hear.

8          MR. PEARLMAN:  I did have a chance to meet with

9   the presentence report writer.

10         Can you hear, Mr. Class?

11         THE DEFENDANT:  Yeah.

12         MR. PEARLMAN:  And I had a chance to review the

13  report, and everything seems to be in order with the

14  exception that Mr. Kramer made.  I do understand that

15  Mr. Kramer is standby counsel.

16         Your Honor, when I was referring to him following

17  the law, what I'm actually referring to is him recognizing

18  that he is a felon and that he has lost his firearms

19  privileges.

20         If Mr. Class wants to take firearms back to

21  Capitol grounds, the government will need to make a choice

22  about whether to prosecute him further for those offenses,

23  but we are past that point.

24         The question is, is he going to follow the rules

25  of probation.  And is he going to, beyond that -- well,

1   concurrently with that and beyond that, recognize that he no

2   longer has the right to carry firearms, permits, no permits.

3   That is the issue, and that is what I was referring to with

4   respect to whether or not he is going to follow the law.

5            Mr. Class does an excellent job at finding --

6            THE COURT:  I don't mean to interrupt you, but I

7   will give you an opportunity to allocute at the appropriate

8   time, if that's what you're doing.

9            MR. PEARLMAN:  With respect to other issues that

10  Mr. Class has raised?

11           THE COURT:  That are proper objection as to the

12  presentence report.

13           MR. PEARLMAN:  I guess insofar as he is alleging

14  that he did not voluntarily enter into the plea, I think it

15  is up to Mr. Class and standby counsel, if they are filing a

16  motion to withdraw the plea, I would note that I think

17  Your Honor did what Your Honor was supposed to do with

18  respect to the Rule 11 colloquy, and that there is not a

19  basis to withdraw the plea.

20           And, finally, to the extent that paperwork was not

21  filed, I don't know what paperwork Mr. Class is referring

22  to.

23           We have received additional motions and papers

24  from Mr. Class, people purporting to represent Mr. Class in

25  some capacity.  I have seen, on the ECF system, that

1  Your Honor has also received and denied certain filings

2  filed by Mr. Class.  So I don't know what he is referring to

3  at that point.

4         Other than that, I'm prepared to allocute whenever

5  Your Honor likes.

6         THE COURT:  All right.  Thank you.  You may be

7  seated.

8         I find that the challenges raised by Mr. Class are

9  challenges as to issues of law that are not challenges to

10 the presentence report; otherwise, those challenges will not

11 affect or be considered with respect to sentencing.

12        Mr. Class, then, we'll proceed to the sentencing

13 hearing.  And if you care to speak on your behalf, I'll hear

14 you.  If you've said everything you want to say, that's fine

15 too.

16        Would you like to say anything before I decide on

17 sentence?  If you do, please come up to the microphone.

18        THE DEFENDANT:  Well, I pretty much, with what

19 we've said here and stated, is the fact that you're going to

20 sentence.  But I also know the fact that my paperwork was

21 supposed to have been filed by Mr. Kramer, and it was not

22 because it was handed to him and it was refused; therefore,

23 any paperwork that I put in that could have sat here and

24 changed the verdict of this case was denied of due process.

25        So like I said, at this point in time with what

1   we're dealing with here, I put the information forward.

2   I always sit here and I have defended myself with enter of

3   appearance the best way I could.  I've used the laws.

4          And, again, it comes back in with what

5   Mr. Pearlman said, if I'm going to be on probation, well,

6   I have to follow the law.  The question comes back in, what

7   laws are we supposed to follow?  Because obviously we're not

8   following the ones that's written in the books.  So we have

9   to have the books sitting here so we know what laws we are

10  following.  If it's the laws that's written in the U.S.C.

11  Codes from Title 1 to Title 50, now we got the problem of it

12  is that I did follow these laws.

13         Again, this Court really should dismiss this case

14  on this issue, the fact that the laws were followed and are

15  being misinterpreted.

16         And I will remind the Court that I was put under

17  an oath, if I lie, that's perjury.  Well, Mr. Pearlman was

18  put under an oath to the Constitution and to his oath of

19  office that he was supposed to uphold, same thing to the bar

20  association.  He could not mislead, misrepresent,

21  misconstrue, put false information before the Court.  He has

22  continuously.  This is where the problem's lying in.

23         Now, you're going to sit down and say, well, this

24  really has nothing to do.  But it has everything to do with

25  due-process violations and it has everything to do with

1   constitutional contempt of what is happening here.

2          This is supposed to be a court of law.  And I

3   respect the fact that it's supposed to be a court of law.

4   Then we need to declare what laws is supposed to be used in

5   this courtroom, if it's the U.S.C. code, CFRs, statutes at

6   large, congressional records, administrative codes, personal

7   codes, personal laws.  If there's personal laws, I could

8   have access to these.

9          And I'm supposed to be able to file paperwork in.

10  And if Mr. Kramer refuses to file my paperwork in, then that

11  means that every single document that we filed in here has

12  been refused and turned down, so I've had to file them on my

13  own.  So like I said, technically, morally, this case should

14  be dismissed based on the fact that errors were made.  And

15  that would be the moral thing to turn around and do here.

16         Other than that, like I said, I'm not going to sit

17  here and debate, because it's -- I have found out, like

18  Mr. Kramer says, you know, that isn't how it's done here.

19         You guys follow your own set of rules, your own

20  regulations, and I've learned that.  And I've sat down and I

21  have tracked this very well with all my own documents we've

22  laid out.  There's no set of rules and regulations that's

23  being followed here.  It's whatever the opinion is or

24  whatever the concept and theory is for that day.

25         Like I said, I'm not trying to be rude, I'm not

1   trying to be nasty, I am trying to defend myself.  I am

2   trying to come back and say, I have tried to follow the

3   rules, I've tried to follow the laws.  I've sat down and did

4   what was required.  And you know what?  It wasted my time

5   because I've sit here and learned it doesn't matter how hard

6   one tries to be a law-abiding citizen.  It doesn't mean

7   nothing when it comes down to what the Court system does and

8   how they want to interpret things.

9           So I'm not trying to be nasty and I'm not trying

10  to be rude, but, you know, I'm looking at a felony here that

11  should never have existed because I followed proper

12  procedures.

13          You know, that's my statement, however you want to

14  handle it, you're going to do whatever.

15          THE COURT:  All right.  Thank you, Mr. Class.

16  You may have a seat.

17          I'm going to ask Mr. Pearlman to come up, unless,

18  Mr. Kramer, you have anything you want to add as standby

19  counsel.

20          MR. KRAMER:  Your Honor, I would just add that the

21  parties don't dispute the guidelines calculations, which

22  result in a range of zero to six months.  And both parties

23  agree on the appropriate sentence, which is the government

24  agreeing to a sentence of probation for Mr. Class.

25          He has no significant prior record.  Most of it is

1   traffic offenses.  There's one very old weapons offense that

2   was somewhat, as they go, a minor offense.

3          He, obviously, has quirky views on a number of

4   issues, but he has, with the exception -- obviously, he had

5   a very strange way of not appearing for trial.  He wrote and

6   let authorities know about it in advance, and then kept on

7   his ankle bracelet and stayed at home.  So it wasn't the

8   usual flight or just disregard of the Court's order

9   without -- I mean, usually people don't give advance notice.

10  Let me put it that way.  For some reason, Your Honor and

11  Mr. Pearlman and I were not notified of the letter he wrote

12  to the authorities in North Carolina in advance, or we might

13  have been able to do something about it before then.

14         Other than that, he had one violation -- for 18

15  months, he's been on an ankle bracelet, electronic

16  monitoring, and he had one violation of that early on when

17  Judge Kessler had the case.  But other than that, his

18  conduct on the ankle -- on the electronic monitoring has

19  been in full compliance with the law.  He's obeyed that.

20         He has no guns left at home.  So he doesn't have

21  any guns, firearms to possess anymore.  He knows he can't

22  possess them.

23         He did have permits for all the guns that were in

24  D.C., so they were legally possessed, in a sense.

25         The only -- it turns out the reason he committed a

1   crime is he parked in the wrong place, he parked on the

2   Capitol grounds.  Otherwise, if he had parked on the

3   streets, just a block away on the streets of D.C., it would

4   not have been a crime.  In light of the recent rulings,

5   because he had the permits for the weapons, they weren't

6   unlawfully carried.  So -- and he's been, as I said, on the

7   electronic monitoring.

8          His wife is quite -- has a number of physical

9   problems, as the presentence report states, as does

10  Mr. Class.  He served his country honorably in the military.

11         So I would just ask Your Honor to place him on the

12  term of probation that the government is recommending, and

13  that the guidelines indicate is appropriate.

14         And he takes care of his wife.  He takes her to

15  medical appointments, which are frequent, as well as his own

16  medical appointments, obviously.  So I would just ask

17  Your Honor to follow the government's recommendation and

18  what the guidelines authorize.

19         And also ask Your Honor to -- if his ankle

20  bracelet could be removed at this point, it's obviously been

21  on for the pretrial monitoring, and is both uncomfortable

22  for him, and I think he pays part of the money.  So it's a

23  financial burden.  He lives solely off disability.

24  So that's about all I have to say.

25         The parties agree, and I would just ask Your Honor

1   to accept -- I mean, I understand his quirky views, but in

2   the end, he's -- in light of all the circumstances, just ask

3   Your Honor to follow the recommendations.  Thank you.

4          THE COURT:  Thank you.

5          Mr. Pearlman.

6          MR. PEARLMAN:  Judge, we are asking for a period

7   of appropriate probation and supervision in this case.

8          Just to clarify a point that Mr. Class made, his

9   privilege is being revoked to carry firearms extends until

10  the end of his life, it doesn't extend just through

11  probation.

12         Our concern, and I hope that it is something that

13  Mr. Class will consider, is that since this case began, he

14  has blamed no one but -- I'm sorry, he has blamed everyone

15  except for himself.  He has filed lawsuits against the

16  Capitol police, who lawfully arrested him.  He has blamed

17  the U.S. Attorney's Office for improperly prosecuting him.

18  Just now, he appeared to blame the manner in which the

19  marshals brought him from North Carolina to D.C. after he

20  was, essentially, in contempt of court.  He has blamed this

21  Court.  I am surprised, frankly, that he hasn't blamed the

22  Probation Office at this point.

23         If this were any other defendant, I think this

24  would cause great concern that the words that he is

25  expressing are basically saying, I have no remorse.

1          In this case, it's followed a quirky procedural

2     path.  I take Mr. Class at his word that he will follow the

3     conditions of probation and that he understands the law as

4     it now applies to him, whether or not he likes it.

5          We'll ask for a period of probation, and we wish

6     Mr. Class the best in adhering to the law as it exists.

7     Thank you, Your Honor.

8          THE COURT:  All right.  Thank you.

9          Mr. Class, may I invite you back up to the podium?

10          Mr. Class, the law requires that I consider

11     numerous factors in determining your sentence.  I have to

12     consider the nature and circumstances of this offense, as

13     well as your history and characteristics.

14          You brought lots of weapons in your vehicle that

15     you parked on the grounds of the U.S. Capitol, and that's a

16     dangerous mix these days.  But to your credit, you did not

17     use any of them or engage in any act of violence.

18          I think what you do need to do now is to spend

19     time thinking about how to care for your wife's health and

20     your own, and how to avoid doing things that might get you

21     in trouble.

22          I have to consider the kinds of sentences that are

23     available under the law and the kinds of sentence and the

24     sentencing range recommended by the Sentencing Guidelines.

25          The law allows a prison sentence of up to five

1   years, although the Sentencing Guidelines recommend the

2   sentence within a range of zero to six months.

3          I have to consider any pertinent Sentencing

4   Commission policy statement, although no additional one has

5   been presented here.

6          I have to consider the need to avoid unwarranted

7   sentence disparity among defendants with similar records who

8   have been found guilty of similar conduct.  That ordinarily

9   suggests a sentence within the Guidelines Range, although

10  aggravating or mitigating factors can warrant a sentence

11  outside that range.

12         I must also consider the need, if any, to provide

13  restitution to any victims, although that is not applicable

14  here.

15         The sentence that I impose, then, will be

16  sufficient but not greater than necessary to reflect the

17  seriousness of the offense, to promote respect for the law,

18  to provide just punishment and adequate deterrence, to

19  protect the public, and to provide you with any needed

20  correctional treatment in the most effective manner.

21         It's the judgment of this Court that you,

22  Rodney Class, are hereby committed to the custody of the

23  Bureau of Prisons for a term of time served, which is

24  24 days, on Count 1.

25         I further sentence you to serve 12 months of

1    supervised release and to pay a $100 Special Assessment, in

2    addition to a fine of $250.

3              The condition of electronic monitoring is now

4    terminated.

5              The Special Assessment and fine are immediately

6    payable to the Clerk of this Court.

7              Within 30 days of any change of your address, you

8    must notify the Clerk of that change until such time as the

9    financial obligations are paid in full.

10              You shall relinquish all interest in and forfeit

11   to the United States the following property seized upon your

12   arrest:  The Taurus .44 caliber gun with seven rounds of

13   ammunition, the Luger 9-millimeter pistol with magazine and

14   eight rounds of ammunition, the Henry .44 caliber gun with

15   11 rounds of ammunition, 14 knives, one switch blade, three

16   axes, 145 rounds of 44-caliber ammunition, and 50 rounds of

17   9-millimeter ammunition.

18              Mr. Class, you shall report in person today to the

19   Probation Office in this district.

20              While you are on supervision, you shall submit to

21   collection of DNA, you shall not possess a firearm or other

22   dangerous weapon, you shall not use or possess any illegal

23   controlled substance, and you shall not commit another

24   federal, state or local crime.

25              You shall also abide by the general conditions of

1   supervision that have been adopted by the U.S. Probation

2   Office, as well as the following special conditions:

3   You may not bring a vehicle to or park on Capitol grounds.

4   You must notify the United States Capitol police prior to

5   visiting the Capitol grounds.  You shall pay the balance of

6   any fine owed at a rate of no less than $50 each month, and

7   provide verification of payment to the Probation Office.

8           The Probation Office shall release the Presentence

9   Investigation Report to all appropriate agencies in order to

10  execute the sentence of the Court.

11          Mr. Class, you have a right to appeal the sentence

12  that I've just imposed, if you think the sentence is illegal

13  or exceeds the Sentencing Guidelines range.  If you choose

14  to appeal, you must file an appeal within 14 days after the

15  Court enters judgment.

16          You also have a right to challenge the sentence --

17  to challenge the conviction entered or sentence imposed if

18  new and currently unavailable information becomes available

19  to you on a claim -- or a claim that you received

20  ineffective assistance of counsel in entering a plea of

21  guilty to the offense of conviction, or in connection with

22  the sentencing.

23          If you are unable to afford the cost of an appeal

24  or a challenge, you may request permission from the Court to

25  proceed without any cost to you.

1          Are there any further matters that need to be

2    taken up?

3          MR. KRAMER:  Your Honor, the only thing I would

4    ask is if Your Honor would consider waiving interest while

5    he raises the money to pay the fine on the Special

6    Assessment.

7          THE COURT:  Mr. Pearlman.

8          MR. PEARLMAN:  I defer to the Court.

9          THE COURT:  All right.  I will also order that

10   interest on the fine and Special Assessment be waived before

11   they are paid.

12         THE DEFENDANT:  Explain.

13         THE COURT:  I'll give you a moment to hear from

14   your standby counsel first.

15         If you want to sit, you can do that.

16         (Counsel conferred with defendant off the record.)

17         MR. KRAMER:  Your Honor, he was asking solely

18   about the financial aspect.

19         Your Honor imposed $100 Special Assessment and a

20   $250 fine, a total of $350.  He was asking me what was

21   waived?  I told him -- I didn't tell him, but ordinarily,

22   interest would be due on that as long as it's unpaid.  But I

23   asked -- Your Honor has the authority, especially for a

24   defendant of limited means, to agree that he would not be

25   responsible for accruing interest until it's paid, and

1  Your Honor agreed to that request and ordered that he not be

2  responsible for interest while he's paying the total of

3  $350.  That's --

4          THE DEFENDANT:  Is that supposed to be paid today

5  right now, or am I going to have time to pay it within 30

6  days?  And what am I supposed to pay it with?

7          THE COURT:  The period of time in which you have

8  to pay the fine and the Special Assessment runs throughout

9  the period of your supervised release.  Ordinarily, if you

10 don't pay those amounts today, interest will accrue on that

11 unpaid balance.

12         I have agreed to your standby counsel's request

13 that we not impose interest that accrues during the period

14 of unpaid balance.  Does that answer your question?

15         THE DEFENDANT:  All right.  So I have several days

16 to find a way to make a payment?

17         THE COURT:  Without having to accrue interest,

18 that's correct.

19         THE DEFENDANT:  Yeah.

20         THE COURT:  All right.

21         The payment is due immediately, but you will be

22 able to pay later, if you can't pay today, without having to

23 have the additional amounts of interest that would

24 ordinarily pile up on top of the unpaid balance.

25         THE DEFENDANT:  Yeah.  I guess I need to know what

1    payment is -- what payment is?  How do you make tender here?

2    What you are we using here?

3         MR. KRAMER:  Your Honor, the Probation Office will

4    give him all that information.  I know they have the forms.

5    He's got to meet with them after court, and they have the

6    forms to provide him where the payment's made and how it's

7    made.

8         THE DEFENDANT:  I also need to know with what?

9    What are we paying with?  We got obligations of the

10   United States under the Federal Reserve under U.S. currency.

11        MR. KRAMER:  Either U.S. currency is fine, as I

12   understand it, cashier's check, personal check, money order.

13        THE COURT:  Part of the reason that I directed you

14   to report immediately to the Probation Office is that they

15   have answers to all of those very questions.

16        THE DEFENDANT:  Okay.  All right.

17        THE COURT:  All right.  Anything else that needs

18   to be taken up?

19        MR. KRAMER:  No, Your Honor.  Thank you.

20        THE COURT:  Anything else?

21        MR. PEARLMAN:  No, Your Honor, thank you.

22        THE COURT:  All right.  Thank you very much.

23   You may be excused.

24        And, Mr. Class, good luck to you, sir.

25        THE DEFENDANT:  All right.  Thank you.

```
1              THE COURT:  All right.
2                  C E R T I F I C A T E
3              I, William P. Zaremba, RMR, CRR, certify that
4    the foregoing is a correct transcript from the record of
5    proceedings in the above-titled matter.
6
7
8    Date: October 29, 2015_____  /S/__William P. Zaremba_____
9                                    William P. Zaremba, RMR, CRR
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```